Michael A. McGill, SBN 231613
mcgill@policeattorney.com
Russell M. Perry, SBN 246252
russell@policeattorney.com
Christopher Gaspard, SBN 275763
chris@policeattorney.com
LACKIE, DAMMEIER & MCGILL APC
367 North Second Avenue
Upland, California 91786
Telephone: (909) 985-4003
Facsimile: (909) 985-3299

Attorneys for Plaintiffs,
GUADALUPE POLICE
OFFICERS' ASSOCIATION
& CARLOS LIMON

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

GUADALUPE POLICE OFFICERS' ASSOCIATION; CARLOS LIMON,

Plaintiffs,

v.

CITY OF GUADALUPE, a municipal corporation; GUADALUPE POLICE DEPARTMENT, an agency; GEORGE MITCHELL, individually and in his official capacity; and DOES 1 through 10 inclusive,

Defendants.

Case No. CV 10-8061 GAF (FFMx)

*Honorable Gary A. Feess*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Date: June 11, 2012
Time: 9:30 AM
Courtroom: 740

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. NARRATIVE STATEMENT ..... 1

III. STANDARD OF REVIEW ..... 4

IV. ARGUMENT ..... 5

A. DEPARTMENT POLICY 1058 UNCONSTITUTIONALLY INFRINGES UPON PLAINTIFFS' FIRST AMENDMENT RIGHTS ..... 6

1. Policy 1058 Has Restrained Plaintiffs From Engaging In Speech on Matters of Public Concern ..... 7

2. Defendants Have Not, And Cannot, Demonstrate That The Restrictions Imposed On Plaintiffs' Speech Is Justified ..... 9

3. Policy 1058 Is Unconstitutional "As Applied" To Particular Conduct Plaintiffs Have Refrained From Engaging In Due To Fear of Discipline ..... 13

4. Sections 1058.4(f) and (g) and 1058.4.1(a) and (b) Are Unconstitutional Prior Restraints On Plaintiffs' First Amendment Rights ..... 13

5. Sections 1058.3, 1058.4(b) and (f), and 1058.4.1(a) and (b) Are Unconstitutionally Overbroad and Vague ..... 17

B. POLICY 1058 VIOLATES THE EQUAL PROTECTION CLAUSE BECAUSE ITS EXCLUSION OF NON-GPOA MEMBERS IS NOT NARROWLY TAILORED TO FURTHER A COMPELLING INTEREST ..... 21


LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

C. SECTION 1058 VIOLATES PLAINTIFFS' RIGHTS TO DUE PROCESS BECAUSE THE PROVISIONS ARE UNCONSTITUTIONALLY VAGUE .......... 22

V. CONCLUSION .......... 23

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

# TABLE OF AUTHORITIES

**Cases**


*Alexander v. U.S.*
509 U.S. 544 (1993) .......... 10

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) .......... 2,9

*Bardzik v. County of Orange*
635 F.3d 1138 (9th Cir. 2011) .......... 8

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001) .......... 6

*CA Teachers Ass'n v. State Bd. of Educ.*
271 F.3d 1141 (9th Cir. 2001) .......... 15

*City of Chicago v. Morales*
527 U.S. 41 (1999) .......... 14

*Clairmont v. Sound Mental Health*
632 F.3d 1091(9th Cir. 2011) .......... 6

*Connick v. Myers*
461 U.S. 138 (1983) .......... 3,4

*Garcetti v. Ceballos*
547 U.S. 410 (2006) .......... 2

*Gilbrook v. City of Westminster*
177 F.3d 839 (9th Cir. 1999) .......... 3,8

*Grayned v. City of Rockford*
408 U.S. 104 (1972) .......... 13, 14, 16

*Humanitarian Law Project v. U.S. Treasury Dep't*
578 F.3d 1133 (9th Cir. 2009) .......... 14






LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

# TABLE OF AUTHORITIES
(Continued)

*Hyland v. Wonder*
972 F.2d 1129 (9th Cir. 1992)........4, 5

*Johnson v. Multnomah Co.*
48 F.3d 420, 425 (9th Cir. 1995)........4, 6, 8, 18

*Joseph Burstyn, Inc. v. Wilson*
343 U.S. 495 (1952)........10

*Keyser v. Sacramento City Unified School Dist.*
265 F.3d 741(9th Cir. 2001)........7

*McKinley v. City of Eloy*
705 F.2d 1110 (9th Cir. 1983)........4, 6, 8

*Pickering v. Bd. of Educ.*
391 U.S. 563 (1968)........6

*Police Dept. of City of Chicago v. Mosley*
408 U.S. 92 (1972)........17

*Powell's Books, Inc. v. Kroger*
622 F.3d 1202 (9th Cir. 2010)........13

*Robinson v. York*
566 F.3d 817 (9th Cir. 2009)........3

*Sagana v. Tenorio*
384 F.3d 73 (9th Cir. 2004)........16

*Smith v. University of Washington*
392 F.3d 367 (9th Cir. 2004)........17

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

# TABLE OF AUTHORITIES
## (Continued)

**Federal Statutes**

42 U.S.C. § 1983 .................... *passim*

**Federal Rules**

Federal Rule of Civil Procedure 56(a) .................... 5

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

## I. INTRODUCTION

This action was brought by Plaintiffs to remedy the unlawful attempt by their government employer to prevent a select group of employees from exercising their constitutionally protected First Amendment free speech rights, rights to Equal Protection, and rights to Due Process.

Defendants unilaterally, and abruptly, imposed upon Plaintiffs Department Policy 1058, which contains numerous impermissible restraints on Plaintiffs' speech. In addition to expressly restraining clearly protected speech, the Policy's provisions are impossibly broad and vague, with the result of chilling various instances of Plaintiffs' speech activities; activities which they routinely engaged in prior to Policy 1058's implementation.

The net effect of Policy 1058's unconstitutional provisions is to prevent Plaintiffs, or anybody in Plaintiffs' position, from exposing corruption, mismanagement, or incompetency within the highest levels of their own City government. Moreover, the Policy expressly forbids Plaintiffs from engaging in the local electoral process while identifying themselves as police officers. The Policy also denies Plaintiffs their rights to equal protection, and their rights to due process.

These restraints on speech and activities are protected under the First Amendment. The undisputed facts, and clearly settled law, demonstrate that Plaintiffs' constitutional rights have been infringed. As such, Plaintiffs request this Court to grant summary judgment.

## II. NARRATIVE STATEMENT

Defendant City of Guadalupe ("City") enacted the Guadalupe Police Department Manual on October 1, 2010. (Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law (SUF), ¶ 3, 4.) The Policy includes section 1058, entitled "Employee Speech, Expression and Social Networking." (See Exhibit A, attached hereto.) When it was implemented, Defendants indicated the Policy was

in fact a new term and condition of employment, as Plaintiffs would be "responsible for understanding and complying with the provisions of the new manual." (Plaintiffs' SUF, ¶ 5,6.) As such, Plaintiffs reasonably understand that failure to comply with any of the Policy's provisions is grounds for discipline, up to and including termination. (Plaintiffs' SUF, ¶ 6.)

Some six months prior to the Policy Manual's implementation, Defendants submitted a draft to police department employees for review and comment. (Plaintiffs' SUF, ¶ 7, 8.) This draft did not include section 1058, including the provisions at issue in this case. (Plaintiffs' SUF, ¶ 7, 8.) On September 30, 2010, one day prior to the Policy Manual's implementation, Defendants presented the police department employees, including Plaintiffs here, the final version. (Plaintiffs' SUF, ¶ 7, 8.) This version did include Policy 1058. (Plaintiffs' SUF, ¶ 7, 8.) Thus, Plaintiff police officers had a single night to review the final version, which for the very first time included the provisions at issue in this case.

***Prohibited Speech Activities***

Policy 1058 contains various prohibitions on Plaintiffs' speech activities.

Section 1058.3, "SAFETY," provides:

> "Employees should carefully consider the implications of their speech or any other form of expression when using the Internet. Speech and expression that may negatively affect the safety of the Guadalupe Department employees, such as posting personal information in a public forum, can result in compromising an employee's home address of family ties. Employees should therefore not disseminate or post any information on any forum or medium that could reasonably be expected to compromise that safety or privacy of any employees, employee's family or associates." (See Exhibit A, attached hereto.)

Section 1058.4, "PROHIBITED SPEECH, EXPRESSION AND CONDUCT," provides in relevant part:





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

> "In order to meet the Department's safety performance and public-trust needs, the following are prohibited:
>
> ...
>
> **(b)** Speech or expression that, while not made pursuant to an official duty, is significantly linked to, or related to, the Guadalupe Police Department and tends to compromise or damage the mission, function, reputation or professionalism of the Guadalupe Police Department or its employees.
>
> ...
>
> **(f)** Disclosure, through whatever means, of any information, photograph, video or other recording obtained or accessible as a result of employment with the Department for financial gain, or any disclosure of such materials without the expressed authorization of the Chief of Police of his/her designee. (Penal Code § 146g)
>
> **(g)** Posting, transmitting or disseminating any photographs, video or audio recordings, likeness or images or department logos, emblems. uniforms, badges, patches, marked vehicles, equipment or other material that specifically indentifies the Guadalupe Police Department on any personal or social networking or other website or web page, without the express written permission of the Chief." (See Exhibit A, attached hereto.)

Section 1058.4.1, "UNAUTHORIZED ENDORSEMENTS AND ADVERTISEMENTS," provides in relevant part:

> "Unless specifically authorized by the Chief, employees may not represent the Guadalupe Police Department or identify themselves in any way as being affiliated with the Guadalupe Police Department in order to do any of the following (Government Code §3206 and 3302): **(a)** Endorse, support, oppose or contradict any political campaign or initiative;**(b)** Endorse, support, oppose or contradict any social issue, cause or religion." (See Exhibit A, attached hereto.)



LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

***Restrained Speech Activities As A Result of Policy1058***

Plaintiffs Limon and GPOA have refrained from participating in four specific First Amendment speech activities as a direct consequence of their fear of disciplinary action pursuant to Policy 1058. (Plaintiffs' SUF, ¶ 9-17.) These four are: (1) refraining from making public statements about the renewal of the Chief of Police's contract, (2) refraining from endorsing and/or opposing individuals for election to the Guadalupe City Council, (3) refraining from making public statements contesting the City administration's public statements indicating the Chief of Police made significant improvements within the Department that have positively affected public safety, and (4) refraining from making public statements regarding a "quid pro quo" arrangement between the Chief of Police and certain City administration officials involving the personal use of City property. (Plaintiffs' SUF, ¶ 9-17.)

## III. STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue if the evidence establishes that a reasonable jury cannot return a verdict for the non-moving party. *Id.* at 248. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* If the evidence put forth by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-250.

## IV. ARGUMENT

42 U.S.C. § 1983 provides a civil remedy for deprivations of federally protected rights caused by persons acting under state law. *Parratt v. Taylor,*





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

451 U.S. 527, 535 (1981), overruled on other grounds. The undisputed facts and settled law demonstrate that Defendants, acting under color of state law, caused Plaintiffs to suffer deprivations of their First Amendment, Equal Protection, and Due Process rights.

There can be no dispute that all the Defendants in this case acted "under color of state law." The individual Defendants in this case acted "under color of state law" because they implemented Policy 1058 in their official capacity. *Vang v. Toyed* 944 F.2d 476, 479 (9th Cir. 1991.) Defendant City is liable under section 1983 because the underlying "action" at issue, Policy 1058, is an "official policy" of the City. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694 (1978).[1]

Policy 1058 has caused Plaintiffs to suffer deprivations of their constitutional rights. Policy 1058 unconstitutionally infringes upon Plaintiffs' First Amendment right to freedom of expression through prior restraint, overbreadth, vagueness, and as-applied to four specific instances of Plaintiffs' planned, yet refrained-from, speech activities. These infringements upon Plaintiffs' First Amendment activity have not been, and cannot be, sufficiently justified by Defendants.

Policy 1058 also denies Plaintiffs the equal protection of the laws, as guaranteed by the Fourteenth Amendment, by targeting Plaintiffs' First Amendment rights based on their inclusion in their employment group, without sufficient justification. Finally, Policy 1058 denies Plaintiffs their rights to Due Process by being unconstitutionally vague, such that the enforcement of the Policy's provisions are arbitrary and discriminatory.

---

[1] Moreover, government entities are "persons" under section 1983. *Monell,* 436 U.S. at 690; and an "official policy" is a formally adopted rule, statute, or guideline enacted by the public entity. See, *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

### A. DEPARTMENT POLICY 1058 UNCONSTITUTIONALLY INFRINGES UPON PLAINTIFFS' FIRST AMENDMENT RIGHTS

As public employees, Plaintiffs Limon and the GPOA are entitled to the free speech protections of the First Amendment when they "speak as citizens" on "matters of public concern."[2] *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006). When speech of this type is established, the government employer, Defendants here, may only restrict these speech rights if they meet their burden of providing sufficient justification under the balancing test as outlined in *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968). The undisputed facts, and well-established case law, demonstrate that Defendants have not, and cannot, meet this burden.

Defendants' have imposed an unjustified "prior restraint" on Plaintiffs' free speech rights through Policies 1058.4(f) and (g) and 1058.4.1(a) and (b). They've also imposed impermissibly "overbroad" and "vague" policies upon Plaintiffs, which include Policies 1058.3, 1058.4(b) and (f), and 1058.4.1(a) and (b). Additionally, the specific application of Policies 1058.3, 1058.4(b) and (f), and 1058.4.1(a) and (b) to four particular instances of Plaintiffs' planned and protected speech activities is unconstitutional and impermissible.

Because the evidence demonstrates that Defendants cannot justify any of these restrictions, Plaintiffs' First Amendment rights have been impermissibly restrained by these provisions of Policy 1058, and are entitled to summary judgment.

---

[2] As this Court noted in its Order, "an organization itself enjoys speech rights," citing Citizens United v. Fed. Election Comm'n, 130 S. Ct. 876, 899 (2010), and "an organization can speak only through its members." (Order, p. 7).

**1. Policy 1058 Has Restrained Plaintiffs From Engaging In Speech On Matters of Public Concern While Speaking As Private Citizens.**

Whether particular speech activities are deemed "matters of public concern" is purely an issue of law for the Court to decide. *Connick v. Myers,* 461 U.S. 138, 147 (1983). As a matter of law, Ninth Circuit precedent demonstrates that each of the four above-referenced refrained-from speech activities are on matters of public concern. Furthermore, the undisputed facts and law show that these speech activities were to be engaged in by Plaintiffs in their capacity as private citizens, and not pursuant to their official capacity as police officers.

"If an employee's expression relates to an issue of 'political, social, or other concern to the community,' as distinct from a mere personal grievance, it fairly is characterized as addressing a matter of public concern." *Gilbrook v. City of Westminster,* 177 F.3d 839, 866 (9th Cir. 1999). More specifically, "as a matter of law, the competency of the police force is a matter of public concern." *Robinson v. York,* 566 F.3d 817, 822 (9th Cir. 2009).[3] Additionally, the "misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern." *Johnson v. Multnomah Co.,* 48 F.3d 420, 425 (9th Cir. 1995). So too are allegations of misconduct amounting to "actual or potential wrongdoing or breach of public trust." *Connick,* 461 U.S. at 138 (1983). These issues are considered matters of public concern because the exposure of abuses, inefficiency, and incompetence of public law enforcement officials "are of vital interest to citizens in evaluating the performance of their government." *Hyland v. Wonder,* 972 F.2d 1129, 1137 (9th Cir. 1992).

The speech activities restrained by Policy 1058 fit squarely within this established precedent and understanding of what constitutes matters of public

---

[3] Also see, *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir. 1983): "the competency of the police force is a matter of public concern."





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

concern. Plaintiffs have refrained from, and plan on engaging in, public speech concerning (1) the Chief's value, management, and competency as head of the Department, (2) public misstatements of fact by City administration concerning specific instances of the Chief's effectiveness as the leader of the Department, (3) an apparent quid-pro-quo arrangement between the Chief and city officials regarding potential misuse, wastefulness, and potential wrongdoing in connection with public funds and resources, and (4) participation in the election of city council members (Plaintiffs' SUF, ¶ 9-17.) Such activities are undoubtedly of public concern, as they all "seek to inform the public about the operation of a government agency," or involve the core First Amendment right of engaging in the electoral process, and in no way involve "personal grievances" dealing with "internal office policy." *McKinley,* 705 F.2d at 1114 (9th Cir. 1983).

This Court found as such in its Order: "Plaintiffs have adequately alleged that their intended speech about renewal of the Chief of Police's contract would be on a matter of public concern" (See, Exhibit F attached hereto, Order denying Defendants' Motion to Dismiss Second Amended Complaint, , p. 18); "Speech endorsing and opposing candidates for public office also plainly involves a matter of public concern" (Exhibit F, p. 18); "the Chief's responsibility for making improvements that enhance the police department's ability to respond effectively to emergencies likewise amounts to a matter of public concern" (Exhibit F, p. 19); and the "suggestion that publicly disclosing corruption among public officials does not amount to a 'matter of public concern' is wholly without merit." (Exhibit F, p. 19).

Defendants cannot put forth evidence capable of disputing Plaintiffs' demonstrated past intent and refrain from participating in these activities. (Plaintiffs' SUF, ¶ 9- 17.)

Moreover, Plaintiffs all intended, and do intend, to speak in their capacity as informed citizens, not pursuant to their official duties as employees of the





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

government. (Plaintiffs' SUF., ¶ 18.) As this Court noted in its Order, "nothing suggests that a police officer like Limon has an official duty to speak out on any of the subjects he intends to speak out about," and further, "the GPOA is not an employee and thus cannot speak pursuant to official duties." (Exhibit F, p. 19.) Defendants have put forth no evidence demonstrating that either Plaintiff has an official duty to speak publicly on the Chief's contract renewal, the quid-pr-quo arrangement, factual inaccuracies disseminated by City administration, or to engage in local elective politics. (Exhibit F, p. 19.) Additionally, "there is no reason to think Limon's job with the Department requires him to serve as President of the GPOA." (Exhibit F, p. 19.)

Indeed, if these refrained-from speech activities were not considered matters of public concern spoken in a capacity as a citizen, "some of the most important public employee speech – exposing governmental corruption, wrongdoing, or incompetence – would be left outside the First Amendment's aegis." *Hyland,* 972 F.2d at 1138. Thus, quite reasonably, the Ninth Circuit has uniformly rejected this result for the exact kinds of speech activities Plaintiffs have refrained from for fear of discipline under Policy 1058.

**2. Defendants Have Not, and Cannot, Demonstrate That the Restrictions Imposed on Plaintiffs' Speech Is Constitutionally Justified.**

As Plaintiffs' employer, Defendants have the burden to demonstrate that any infringement imposed by Policy 1058 upon Plaintiffs' First Amendment rights are justified. *Clairmont v. Sound Mental Health,* 632 F.3d 1091, 1106 (9th Cir. 2011). To demonstrate this required justification, Defendants must show that their interest in promoting the efficiency of the public services they perform outweigh the restrictions placed upon Plaintiffs' First Amendment right to speak upon matters of public concern as private citizens. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968).

*Pickering* balancing considers five factors: (1) whether the employee's speech disrupted harmony among co-workers (2) whether the relationship between the employee and the employer was a close working relationship with frequent contact which required trust and respect in order to be successful (3) whether the employee's speech interfered with performance of his duties (4) whether the employee's speech was directed to the public or the media or to a governmental colleague, and (5) whether the employee's statements were ultimately determined to be false. *Bauer v. Sampson,* 261 F.3d 775, 785 (9th Cir. 2001).

The evidence demonstrates that these factors clearly weigh in Plaintiffs' favor. Because Plaintiffs' speech here deals "directly with issues of public concern," Defendants are required to make a "stronger showing of disruption," beyond that normally required where the speech is only tangentially related, such that "real, not imagined, disruption is required." *McKinley,* 705 F.2d at 1115 (9th Cir. 1983). Also, this "real" showing of disruption must be beyond "mere disruption"; a showing of "actual injury to its *legitimate* interests," is required. *Johnson,* 48 F.3d at 427 (9th Cir. 1995), original emphasis.[4]

Defendants cannot satisfy this required "stronger showing of disruption." The undisputed facts, and clearly settled law, demonstrate that Defendants' offered justifications for these infringements are wholly inadequate, to the extent that they have offered any meaningful justifications at all.

Defendants have offered no evidence of any "actual injury" sought to be prevented by the enactment of Policy 1058, or more specifically the provisions at issue in this case. To Plaintiffs' request for such evidence, Defendants have

[4] "There is a series of cases in the Ninth Circuit establishing that the public's interest in learning about illegal conduct by public officials and other matters at the core of First Amendment protection outweighs a state employer's interest in avoiding a mere *potential* disturbance to the workplace." *Keyser v. Sacramento City Unified School Dist.,* 265 F.3d 741, 748 (9th Cir. 2001).



LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

simply, and mechanically, asserted that the implementation of these provisions was needed to "up-date" the Department's Policy Manual to "develop best practices for the most efficient performance and operation" of the Department. (See Exhibit B attached hereto, Defendant City of Guadalupe's Response to Plaintiffs' Written Interrogatories, Set One, p. 5, 6, 7, 9, 11) This does not rise to the level of the required "stronger showing" of "actual injury."

Nor can Defendants make this showing, as they have not asserted that these policies were in response to any prior "actual injury" to a "legitimate interest." (Exhibit B, p. 5, 6, 7, 9, 11.)[5] Furthermore, even if this asserted reasoning were to be deemed sufficient, Defendants cannot, by law, claim they have a "legitimate interest in covering up mismanagement or corruption," to which much of Plaintiffs' refrained-from speech activities directly concerns. *Johnson,* 48 F.3d at 427 (9th Cir. 1995). The first *Pickering* factor, "disruption" of "harmony among co-workers," weighs in Plaintiffs' favor.

The undisputed facts show that Limon and the members of the GPOA hold the positions of police officer, and that they do not "occupy a high-level, policy-making position, for which personal loyalty and confidentiality are indispensible." (Plaintiffs' SUF, ¶ 1, 2.) *Gilbrook v. City of Westminster,* 177 F.3d 839, 868 (9th Cir. 1999).

Defendants have thus far offered no evidence suggesting that any of the planned speech activities would have interfered with Limon's, or the other GPOA members', duties as police officers for the City.[6]

---

[5] Indeed, Defendants' responses imply that they did not even consider these issues prior to implementation, when they respond that the policies were "drafted and provided by Lexipol to defendant." (Exhibit C, p.7.)

[6] Defendants have only asserted, without support, that when Limon acts as President of the GPOA, he "is acting pursuant to his official duties and not as a private citizen." (Defendants MTD Plaintiffs' SAC, p. 14.)

All of Plaintiffs' refrained-from speech activities were to be directed "specifically and purposefully" at the public.[7] *Mckinley,* 705 F.2d at 1115 (9th Cir. 1983.) Defendants have offered no evidence suggesting otherwise.

Finally, Plaintiffs have good-faith and well-informed beliefs about the perceived misuse of public resources and potential corruption occurring within the City and Department. This stems from their position within the Department, as "members of the community who are most likely to be informed and have definite opinions," on such matters as mismanagement, corruption, or overall level of police services provided. *Gilbrook,* 177 F.3d at 867.

Plaintiffs never "checked" their First Amendment "rights at the door" when they accepted employment as police officers with the City of Guadalupe. *Bardzik v. County of Orange,* 635 F.3d 1138, 1144 (9th Cir. 2011). Rather, they retain these rights as private citizens subject only to the extent properly and sufficiently justified by their employer, Defendants here. Yet, the undisputed evidence shows that Defendants have not justified, and cannot justify, the contested policies under *Pickering*. They have not put forth sufficiently "colorable" or "probative evidence", or any evidence, demonstrating that the efficiency of the Department may be harmed by, or more precisely outweighs, the restrictions they've placed upon Plaintiffs' First Amendment rights. *Anderson*, 477 U.S. at 249-250.

As such, Defendants cannot demonstrate that they will prevail under the *Pickering* analysis.

---

[7] Public statements, press releases, press interviews, letters to news media, public endorsement or opposition of political candidates, etc. (Limon Decl., ¶ 5- 12.)



LACKIE, DAMMEIER & MCGILL A PROFESSIONAL CORPORATION

**3. Policy 1058 Is Unconstitutional "As Applied" to Particular Conduct Plaintiffs Have Refrained From Engaging In Due To Fear of Discipline.**

As noted earlier, there are four particular instances of First Amendment activity refrained from by Plaintiffs due to fear of discipline under Policy 1058. The *Pickering* analysis applies to these as-applied challenges. (Exhibit F, p. 18.) This analysis, as discussed above, requires Plaintiffs to show that (1) the intended speech was on "matters of public concern" and they intended to speak as private citizens, and (2) Defendants cannot justify the restrictions under the *Pickering* analysis.

Because the analysis for these "as applied" challenges is the same as discussed in sections **A1** and **A2** above, which demonstrated that speaking publicly on the Chief's effective leadership of the Department, exposing quid-pro-quo arrangements involving public resources, contesting factually inaccurate public statements by City administration, and participating in local electoral politics, are all speech activities that cannot be restrained under *Pickering*, Plaintiffs will not devote another separate discussion to the topic here.

**4. Sections 1058.4(f) and (g) and 1058.4.1(a) and (b) are Unconstitutional Prior Restraints on Plaintiffs' First Amendment Rights.**

The term "prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. U.S.,* 509 U.S. 544, 550 (1993). More simply, and as noted by this Court in its Order Denying Defendants' Motion to Dismiss, a policy will qualify as a prior restraint if it requires speakers to obtain advance permission to speak. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 503 (1952).

Department Policies 1058.4(f) and (g) and 1058.4.1(a) and (b), by their express terms, require Plaintiffs to obtain advance permission prior to speaking. Policies 1058.4(f) and (g) provide, in relevant part:

> "...the following is prohibited...**(f)** Use or disclosure, through whatever means, of any information...obtained or accessible as a result of employment with the Department ... without the expressed authorization of the Chief of Police or his/her designee. **(g)** Posting, transmitting or disseminating any photographs, video or audio recordings, likenesses or images of department logos, emblems, uniforms, badges, patches, marked vehicles equipment or other material that specifically identifies the Guadalupe Police Department on any personal or social networking or other website or web page, without the express written permission of the Chief of Police." (Department Policy § 1058.4(f) and (g).)

Department Policies 1058.4.1(a) and (b) provide, in relevant part:

> "Unless specifically authorized by the Chief of Police, employees may not represent the Guadalupe Police Department or identify themselves in any way as being affiliated with the Guadalupe Police Department in order to do any of the following: **(a)** Endorse, support, oppose, or contradict any political campaign or initiative **(b)** Endorse, support, oppose or contradict any social issue, cause or religion." (Department Policy § 1058.4.1(a) and (b).)

That these policies operate as "prior restraints" on Plaintiffs' First Amendment activity cannot be in dispute; they all, by express terms, require advance permission before conducting any of the enumerated activities. Moreover, it is undisputed that the Policy itself does not limit its application, and Plaintiffs have not received any limiting instruction from Defendants themselves, through either verbal or written conversation or intimation.



LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

A reasonable reading of these restraints leads to unreasonable results: a police officer who attends a child's "career-day" to speak about the job of a police officer, while off-duty and not in uniform, is subject to discipline unless prior permission from the Chief is given (1058.4(f)); a police officer who posts a police academy graduation photo of himself with his family on "Facebook" is subject to discipline unless prior permission from the Chief is given (section 1058.4(g)); a police officer who attends and speaks at a child's local school board meeting, while off-duty, not in uniform, but "identifies" as a police officer, is subject to discipline unless prior permission from the Chief is given (sections 1058.4.1(a) and (b)); a police officer who attends and supports a church fundraising event, while off-duty, not in uniform, but "identifies" as a police officer, is subject to discipline unless prior permission from the Chief is given (section 1058.4.1(b)).

More practically, and germane to this case, as a result of the above policies Plaintiffs have restrained themselves from engaging in various specific instances of protected speech. Plaintiffs have refrained from "disclosing" any "information" to the public concerning the Chief of Police's effectiveness and leadership of the Department, and the resulting impact on public safety, with regards to his contract renewal. (Plaintiffs' SUF, ¶ 9,10; Policy § 1058.4(f).) Such information could only be "obtained" as a "result of employment with the Department", as only employees could effectively see the Chief's impact on public safety. Plaintiffs have refrained from contesting statements from City officials suggesting the Chief's leadership has improved public safety, through his purchase of technology and equipment upgrades. (Plaintiffs' SUF, ¶ 14, 15; Policy § 1058.4(f).) Knowledge of the falsity and/or misleading character of these pronouncements can only be "obtained" as a "result of employment with the Department." Plaintiffs have refrained from exposing a "quid pro quo" arrangement between the Chief and certain City administrators, whereby the Chief lent out City property in exchange for public support. (Plaintiffs' SUF, ¶ 16, 17; Policy § 1058.4(f).) Knowledge of such a





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

situation, potential public corruption, could only be "obtained" as a "result of employment with the Department".

To require Plaintiffs to get advance permission for speaking publicly on such matters is nonsensical, for the individual who stands to lose the most from any public "disclosure" of these issues is the individual whose consent is required pursuant to Policy 1058.4(f).

Further, to engage in any of the public activities listed above while identifying as a member of the GPOA, necessarily "specifically identifies" the speaker as a member of the Department. (Policy § 1058.4(g).) Thus, Plaintiffs choosing to disclose any of the above through any "website or web page" runs afoul of Policy § 1058.4(g) unless the Chief consents beforehand. This provision also prohibits GPOA members from identifying themselves as GPOA members on any issue, if the chosen medium happens to be internet-based.[8]

Plaintiffs have also refrained from participating in the local election process, a process they have participated in numerous times in the past prior to Policy 1058's implementation. (Plaintiffs' SUf, ¶ 12, 13; Policy § 1058.4.1(a) and (b).)

Defendants cannot put on evidence disputing these facts. Because these provisions constitute prior restraints on Plaintiffs' First Amendment activity, their validity depends upon Defendants carrying their burden under *Pickering*. And, as demonstrated above in Section **A1** and **A2**, Defendants have not, and cannot, meet this burden.

**5. Sections 1058.3, 1058.4(b) and (f), and 1058.4.1(a) and (b) are Unconstitutionally Overbroad and Vague.**

Department policies 1058.3, 1058.4(b) and (f), and 1058.4.1(a) and (b) chill Plaintiffs' constitutionally-protected First Amendment rights because they are

[8] The possible categories of speech that are restrained by that provision alone are too numerous to list exhaustively. Plaintiffs are confident this Court can imagine the potentially limitless applications.

unconstitutionally overbroad and vague, by prohibiting a substantial amount of protected speech, and allowing for arbitrary and discriminatory selective enforcement.

***Overbreadth***

When considering whether an enactment is unconstitutionally overbroad, "the crucial question...is whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Grayned v. City of Rockford*, 408 U.S. 104, 114-115 (1972). If the enactment proscribes "a substantial amount" of protected expressive activity, it is invalid if not readily susceptible to a limiting construction. *Powell's Books, Inc. v. Kroger,* 622 F.3d 1202, 1208 (9th Cir. 2010).

All the policies in question "sweep within" their provisions a substantial amount of expressive activity protected under the First Amendment. Policy 1058.3 prohibits the dissemination of "any information" "that could reasonably be expected to compromise (the) safety" of employees, or their families or associates. This language prohibits Plaintiffs from exposing to the public any allegation of corruption or wrong-doing, as it reasonably could adversely affect the safety of involved parties. As a result, Plaintiffs have refrained from exposing the quid-pro-quo arrangement between the Chief and City administrators. (Plaintiffs' SUF, ¶ 16, 17.)

Policy 1058.4(b) prohibits speech that "while not made pursuant to an official duty, is significantly linked to, or related to" the Department and "tends to compromise or damage the mission, function, reputation or professionalism, of the Department." A reasonable reading of this section likewise prohibits Plaintiffs from exposing corruption within the Department, as that sort of information would surely "tend to" damage the reputation or professionalism of the Department.

Policy 1058.4(f) prohibits "disclosure, through whatever means, of any information...obtained or accessible as a result of employment with the

Department...without the expressed authorization of the Chief...or his/her designee." Again, the information Plaintiffs have obtained, and refrained from exposing to the public, concerning a quid-pro-quo arrangement and misstatements of fact about the operations of the Department, is banned by this provision because the information only came "as a result of employment with the Department." (Plaintiffs' SUF, ¶ 16, 17.) These specific instances are in addition to the reasonable interpretations of the section's application outlined in Section **A 4** above.

Lastly, policies 1058.4.1(a) and (b) prohibit Plaintiffs from "identifying themselves in any way as being affiliated with" the Department "in order to endorse, support, oppose or contradict any political campaign or initiative or social issue or cause..." Thus, Plaintiffs have refrained from endorsing City Council candidates, or engaging in City Council elections in any way, as GPOA members since GPOA membership necessarily implies an "identification" of affiliation with the Department. (Plaintiffs' SUF, ¶ 12, 13.) These specific instances are again in addition to the reasonable interpretations of the section's application outlined in Section **A 4** above.

No limiting instruction is contained in or provided for any of these provisions, and Plaintiffs have not been instructed as to the reach, or application, of any of them. Because of this and the extremely expansive language employed in these sections, Plaintiffs have no clue what speech is prohibited and what is not. Further, the prohibition on exposing corruption or endorsing political candidates is clearly protected speech, as explained in sections **A1** and **A2** above.[9] Restraining this speech cannot be justified under *Pickering*.

---

[9] Indeed, Policy 1058.4(b) expressly applies to speech that is not made pursuant to an official duty, as pointed out by this Court in its Order.





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

***Vagueness***

A statute must be sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited. *Humanitarian Law Project v. U.S. Treasury Dep't,* 578 F.3d 1133, 1146 (9th Cir. 2009). Moreover, an enactment may be found unconstitutionally vague if it fails to establish standards sufficient to guard against arbitrary deprivation of liberty interests. *City of Chicago v. Morales,* 527 U.S. 41, 52 (1999). An enactment will be deemed impermissibly vague where it "delegates basic policy matters...for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972). Further, "when First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity..." *California Teachers Ass'n v. State Bd. of Educ.*,271 F.3d 1141, 1150 (9th Cir. 2001).

Policies 1058.3, 1058.4(b) and (f), and 1058.1.1(a) and (b) are unconstitutionally vague. As this Court noted in its Order, it is not obvious what might "reasonably be expected to compromise...safety or privacy," as contemplated by section 1058.3, and "officers 'of common intelligence' would have to guess about what the provision covers." (Exhibit F, p. 21.) Considering the heightened standard when applied to restrictions on First Amendment rights, such broad language is not "sufficiently clear" to guard against arbitrary enforcement by Defendants.

Similarly, this Court stated that "officers of common intelligence would have to guess about what" Section 1058.4(b) covers. (Exhibit F, p. 22.)That section prohibits "speech or expression that, while not made pursuant to an official duty, is significantly linked to, or related to, the Guadalupe Police Department and tends to compromise or damage the mission, function, reputation, or professionalism...," of the Department. In addition to being impossibly vague, it also expressly prohibits





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

constitutionally protected speech, as speech "made not pursuant to an official duty" references the exact test employed for that issue.

Sections 1058.4(f) and 1058.4.1(a) and (b) require the express authorization of the Chief before certain matters are spoken upon. Yet, neither provide any standards for enforcement, nor have Plaintiffs been aware of any articulated standards given to them in any form. Accordingly, these provisions fit squarely within the expressed fear of "delegat(ing) basic policy matters...for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned,* 408 U.S. at 108-109 (1972).

Again, none of the policies discussed above contain any limiting instruction, guidelines, or standards as to their enforcement. Thus the decision to enforce any reasonable interpretation of the vague and sweeping prohibitions is left entirely to Department and City administrators, who may arbitrarily and discriminatorily punish those who speak out on, or expose, issues directly adverse to their interests, such as corruption or incompetence.

Defendants have offered no evidence indicating Plaintiffs, or anyone else, was educated on how these policies are to be enforced. The express language of these provisions provides no guidance as to what is prohibited, and what is not. Indeed, as a result, Plaintiffs have refrained from the above-mentioned protected speech for reasonable fear of discipline. (Plaintiffs' SUF, ¶ 9-17.) And again, as explained in sections **A1** and **A2** above, restraining this speech cannot be justified under *Pickering*.

### B. POLICY 1058 VIOLATES THE EQUAL PROTECTION CLAUSE BECAUSE ITS EXCLUSION OF NON-GPOA MEMBERS IS NOT NARROWLY TAILORED TO FURTHER A COMPELLING GOVERNMENT INTEREST

"Equal protection claims are considered under a two-step analysis. First, (the plaintiff) must show that the statute in question 'results in members of a certain





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

group being treated differently from other persons based on membership in that group'... In the second step, a court assesses the legitimacy of a discriminatory statute under the appropriate level of scrutiny." *Sagana v. Tenorio*, 384 F.3d 731, 740 (9th Cir. 2004).

Policy 1058 treats members of the GPOA, Plaintiffs here, differently from other persons because the policy does not apply to persons not within Plaintiffs' employment group. The restrictions on First Amendment rights contained in Policy 1058 do not apply to City employees other than the police officers which comprise the GPOA. (Policy § 1058.1.)

As for the appropriate level of scrutiny, "(t)he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92 (1972). By its express terms, Policy 1058 affects Plaintiffs' First Amendment interests; "This policy applies to all forms of communication..." (Policy § 1058.1.1.) And, as shown above, it applies to speech which cannot be restrained under *Pickering*. Because this "strict scrutiny" applies, "Defendants bear the burden to demonstrate that the Policy is narrowly tailored to serve a compelling government interest." (Exhibit F, p. 20; citing to *Smith v. University of Washington*, 392 F.3d 367, 372 (9th Cir. 2004).)

Defendants have not, and cannot, meet this burden. Plaintiffs are unaware of any other public employee union in the City that is prevented from exposing corruption within their department, or from endorsing or opposing candidates for elective office, or from speaking to the public about clear matters of public concern of which they would have particular expertise, or of speaking on any matters while identifying oneself as employed by the City.[10] Plaintiffs are also unaware of any

[10] Policy 1058 was drafted and provided to Defendants by Lexipol, a private company, which "provides customizable, state-specific, web-based Law Enforcement Policy Manuals with an integrated training component to help police,

sufficient justification put forth by Defendants that explains why members of the GPOA are prevented from these same activities based solely on their inclusion within the GPOA, while the City's other public employee unions are not. The mere assertion that a need exists to "develop best practices for the most efficient performance and operation" of the Department can apply equally well to any other Department within the City, yet the restrictions on speech imposed upon Plaintiffs only apply so long as they're members of the GPOA. (Exhibit B, p. 5, 6, 7, 9, 11.) These general statements cannot meet strict scrutiny.

Furthermore, even if rational basis scrutiny were to apply, Defendants cannot, by law, claim they have even a "legitimate interest in covering up mismanagement or corruption," to which much of Policy 1058 restrains as discussed above. *Johnson,* 48 F.3d at 427 (9th Cir. 1995).[11]

**C. POLICY 1058 VIOLATES PLAINTIFFS' RIGHT TO DUE PROCESS BECAUSE THE PROVISIONS ARE UNCONSTITUTIONALLY VAGUE**

As this Court stated in its Order Denying Defendants' Motion to Dismiss:

> "The Supreme Court has made clear that a statute or policy can be so vague as to violate the Due Process Clause in two independent ways. See *Hill v. Colorado*, 530 U.S. 703, 732(2000). First, a statute or policy can be impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Id.* Second, a

---

sheriff, probation, state and federal agencies operate more efficiently and effectively." (From Lexipol's official web-page, http://www.lexipol.com/disciplines/enforcement-sv-1.html; also see Exhibit C, p. 7.)

[11] Rational basis review requires "a rational relationship between the disparity in treatment and <u>some legitimate governmental purpose</u>." *Kahawaiolaa v. Norton,* 386 F.3d 1271, 1279 (9th Cir. 2004), emphasis added.





LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

> statute or policy can be impermissibly vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." Id.... Plaintiffs have clearly pleaded that the Policy impinges on a liberty interest protected by the Due Process Clause: their freedom of speech. See *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989) (explaining that an interest "grounded . . . in the First Amendment[] is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment")." (Exhibit F, p. 21.)

In section **A5** above, Plaintiffs have demonstrated that Policies 1058.3, 1058.4(b) and (f), and 1058.1.1(a) and (b) are unconstitutionally vague. As such, These policies have also violated Plaintiffs' right to Due Process as guaranteed under the Fourteenth Amendment, and for this Court's sake will not repeat the argument here.

## V. CONCLUSION

For all of the reasons discussed above, Plaintiffs request that this Court grant Plaintiffs' motion for summary judgment either in full or in part at it sees proper.

Dated: May 14, 2012

LACKIE, DAMMEIER & MCGILL APC

S/Russell M. Perry

Michael A. McGill, Esq.
Russell M. Perry, Esq.
Christopher Gaspard, Esq.
*Attorneys for Plaintiffs*,
GUADALUPE POLICE OFFICERS' ASSOCIATION; CARLOS LIMON

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION